UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE



*******************************************
Jonathan Leite,
    Plaintiff

v.   Civil No. 15-cv-00280-PB

Matthew Goulet *et al.*,
    Defendants
*******************************************

## AFFIDAVIT OF KATHLEEN "BERGERON" DUCHESNE

I, Kathy Duchesne, upon oath do hereby depose and state as follows:

1. My name is Kathy Duchesne, but I was formerly Kathy Bergeron. I am currently employed by the New Hampshire Department of Corrections ("DOC") as a Corrections Officer (CO). I have been employed by the DOC since July, 2008. I make this affidavit based on my personal knowledge.

2. In August 2012 I was working at the Northern Correctional Facility (NCF). My duties include ensuring the safety and security of the facility, offenders, my co-workers and the public. I take these duties seriously and perform them to the best of my ability at all times.

3. I am familiar with the Plaintiff in this case, Jonathan Leite, as he was an inmate assigned to NCF. I remember Mr. Leite as I my duty assignments included security of the visiting room and Mr. Leite would have frequent visitors.

4. I have always treated Mr. Leite in the same respectful way I treat every other offender housed at NCF.

5. On August 24, 2012 I was assigned to second shift in the upper housing unit post. I was assigned along with CO Dube. Upper Housing consists of 4 housing units including "F" or Fox Block, and the industries block.

6. As a CO assigned to that post I am required to do "count" and conduct "rounds." Rounds are to be conducted once hourly. Prior to August 24, 2012 I had conducted rounds during the month of August 2012 on two prior days on F Block. I conducted a round during the 2200 hour on August 19. See Attached Rounds sheet, Bates 2378, which is Exhibit C-1 to this affidavit. I also conducted a number of hourly rounds on August 20, 2012. See Bates 2379, Ex C-2.

7. During rounds, by policy and training, I am to evaluate safety, security and sanitation of the inmate living areas. Rounds are conducted on an hourly basis and are in addition to counts of inmates which occur less frequently. During "count" a census check is conducted to account for and verify all inmates. A "standing count" requires inmates to be out of bed and standing so that a CO can lay eyes directly on the inmate. Counts require an officer to ensure physical presence of every inmate. Rounds, on the other hand, do not require the verification of the identity of inmates and do not require an inmate to move from a bed. During rounds inmates may be away from the living unit and in a work assignment, recreation, schooling, counseling or other activity under the supervision of other correctional officers or staff supervisors. Rounds do not require an officer conducting the "round" to verify the presence of any inmate.

8. These requirements are found in DOC PPD 5.30, "Master Index, Inmate Movement, Accounting, Attire and Identification." The document is confidential for

security purposes. PPD 5.30 deals with "Enforcement Operations" and was in effect in 2012.

9. On August 24, 2012 I conducted rounds on F Block during second shift including those rounds that occurred at approximately 1545 and 1650 hours. See Exhibit, Bates 2383; See also Bates 2. CO Trevor Dube accompanied me during those two rounds. My name is on the rounds log, indicating that I in fact completed the round. Likewise, CO Dube's name indicates the same.

10. By my recent review of video footage captured on August 24, I know I entered F Block at approximately 1540 hours and conducted the round on the bottom tier of the unit. CO Dube conducted the round on the upper tier.

11. Through the video you can see that I looked at the bathroom as I walked by and I entered the mop closet prior to my starting past each cell on the bottom tier. See Video clip, Exhibit B-8 (file 1) starting at 15:40:18. A review of the video reveals that I walked by the bathroom at 15:40:25 looking that way. You see me move under the stairwell and disappear from view at 15:40:30, it is at this time that I am entering the mop closet which is the first room prior to the cells. At this time you see two inmates move away from that area as I approach and make my way into the closet. I am then back in the frame at 15:40:46 *Id.* and then walk by each cell conducting my round.

12. I check to ensure nothing seems out of the ordinary. I use all of my senses to do so. As I pass by each cell I look in to determine if there is any misconduct or safety issue that is visible. COs do not enter cells during rounds unless we need to correct a situation or there appears to be an emergency. I did not witness any issue in passing the cells during the 1540 to 1541 timeframe of the lower F block tier.

3

13. If there are more than 2 individuals in a cell while I conduct a round, I will correct that situation. I did not observe more than two individuals in any cell on August 24, 2012 during the 1540 round on F block.

14. During this particular count the unit was not full of its 69 or so inmates as there was a movement when many of the inmates left the unit. This movement occurred at approximately 1530 hours. F Block had approximately 70 inmates on it on August 24, 2012. The video shows only a small number of inmates on the unit, as I started my round and also shows a large number of inmates leaving for the 1530 movement.

15. Had I witnessed a safety or security concern I would have stopped to investigate, correct, and call for assistance if needed. I have prevented and also broken up inmate on inmate fights/assaults during my tenure as a CO at NCF. I have also corrected many disciplinary infractions during my tenure that I observe while conducting my rounds.

16. If I see something that needs action on a unit, I do not hesitate to engage the behavior or the incident.

17. I did not observe any issue that needed attention during that round or the round conducted at approximately 1650. I did not observe blood on the floor of the unit or any cell. I did not observe water on the floor of the unit or cells. I did not observe vomit on the floor or bedding when I conducted those rounds. I did not observe bloody clothes or towels.

18. Inmates, from my experience, will attempt and do hide items that indicate violations of safety or security. Inmates involved in altercations also attempt to hide any visible sign of the altercation.

19. I was not aware of any specific circumstance of a threat being posed to Inmate Leite.

20. I now know that Inmate Leite was in cell 9 during the 1540 round on a bunk having been placed there by other inmates after they assaulted him. Based on DOC records, I have confirmed that Inmate Leite was assigned to the dayroom, bunk 1, not cell 9.

21. I do not recall explicitly inspecting any inmates' face as I conducted my round; I do not specifically place a face with a particular bunk during rounds. I specifically place faces with assigned bunks during count. If an inmate is on a bed during rounds, with his back to me, or his face turned away from the door and there is only one or two inmates in the cell there is no need for me to conduct a visual inspection of the inmate, unless I sense an issue.

22. If I see an inmate out of place I will, however, engage that inmate to determine if there is an issue or I will engage the inmate to discipline or give a negative spot report.

23. I did not observe any issue during either the 1545 or 1650 rounds that appeared to be unusual or out of the ordinary. At no time during those two rounds was I aware that Inmate Leite was involved in an altercation or needed medical attention. I did not observe any altercation and no inmate alerted me to the fact that there was an injured inmate on the unit.

24. I did not observe Inmate Leite lying on the floor in any portion of F Block.

25. I conducted a standing count at approximately 1700 hours on August 24, 2017, along with Sergeant Sweatt. See Ex B-6 (Count Sheet). As I was conducting count

I recall walking to the bunks in the dayroom, and as I approached speaking to Inmate Leite, asking him why he was not standing for count. Sgt Sweatt was behind me at the time. When I addressed the inmate he attempted to get down from the bunk and as he did, he swayed. Both Sgt Sweatt and I recognized something was wrong with the inmate and Sgt Sweatt immediately called for first responders.

26. Within a couple of minutes medical personnel were in F Block assessing Inmate Leite. An ambulance was then called given his condition, and arrived by approximately 1721 hours. See Bates pp. 5, 29.

27. At no time prior to medical personnel being called to the unit did I observe any sign of trauma or assault.

28. At approximately 1800 hours CO Dube and I conducted a cell search in cell 9, after it was identified that the assault likely occurred in that cell. My incident report from the search indicates that no blood was found within the cell during that search. A pillow without the case was on the floor, and a pair of wet sweat shorts were in the sink, appearing to have been recently washed. See Bates #33.

29. Inmate Leite never asked me to place him in protective custody, nor did he ever ask me to keep him separate from another inmate.

30. Inmate Leite never told me he believed he or anyone else was in danger prior to the assault. I was unaware that there was risk of danger posed to Inmate Leite any more than any other inmate in a New Hampshire prison facility.

31. Neither Inmate Leite nor any other inmate attempted to get my attention during rounds at either 1540 or 1650. Again, I did not observe any vomit or blood on the floor to alert me to a problem during either round. As soon as I was aware and had even

6

an inkling of knowledge that there was a problem with Inmate Leite's physical well-being medical assistance was obtained.

32. I did not escort Inmate Leite to or from his visit with Ashley Peters on August 24, 2012.

33. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Date:   October 9, 2017            /s/ Kathleen Duchesne
                                   Kathleen Duchesne