```
                              Volume: 1
                              Pages: 1-15
                              Exhibits: None
```

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Case No. 15-CV-00280-PB

- - - - - - - - - - - - - - - - - - - - - - - x

JONATHAN LEITE,

                 Plaintiff,

   v.

MATTHEW GOULET, et al.,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - x

DEPOSITION OF JOHNATHAN GELINAS

August 30, 2017

1:33 p.m. to 1:43 p.m.

NORTHERN NH CORRECTIONAL FACILITY

138 East Milan Road

Berlin, New Hampshire


Reporter: Celeste A. Quimby, LCR No. 17

## Page 2

```
 1              I N D E X
 2
 3  WITNESS:       Johnathan Gelinas
 4
 5  EXAMINATION:                          Page
 6         By Mr. King                       4
 7
 8
 9
10  EXHIBITS FOR IDENTIFICATION:
11         None.
12
```

## Page 3

```
 1  A P P E A R A N C E S
 2  For the Plaintiff:
 3         DOUGLAS, LEONARD & GARVEY, P.C.
            By: Benjamin T. King, Esq.
 4         14 South Street, Suite 5
            Concord, NH  03301
 5         (603) 224-1988
            benjamin@nhlawoffice.com
 6         mdouglass@nhlawoffice.com
 7  For the Defendant:
 8         NEW HAMPSHIRE DEPARTMENT OF JUSTICE
            OFFICE OF THE ATTORNEY GENERAL
 9         By: Lynmarie C. Cusack, Esq.
                Francis K. Fredericks Jr., Esq.
10         33 Capitol Street
            Concord, NH  03301
11         (603) 271-3658
            lynmarie.cusack@doj.nh.gov
12         francis.fredericksjr@doj.nh.gov
13
14                  STIPULATIONS
15      It is agreed that the deposition shall be
        taken in the first instance in stenotype and when
16      transcribed may be used for all purposes for which
        depositions are competent under the Federal Rules
17      of Civil Procedure.
18      Notice, filing, caption, and all other
        formalities are waived.  All objections except as
19      to form are reserved until the time of trial.
20      It is further agreed that if the deposition
        is not signed within thirty (30) days after
21      submission to counsel, the signature of the
        deponent is waived.
22
23
```

## Page 4

```
 1  JOHNATHAN GELINAS
 2  having been duly sworn by the reporter,
 3  was deposed and testified as follows:
 4  EXAMINATION
 5  BY MR. KING:
 6  Q. You can have a seat. You occupied Cell 9
 7     on F block on August 24th, 2012, correct?
 8  A. Yeah, I think so.
 9  Q. And was your cellmate at that time Ryan
10     Elliott?
11  A. I can't remember. A lot of cellmates.
12  Q. Yeah. Now, Jonathan Leite was assaulted
13     in your cell on August 24th, 2012; is that right?
14  A. Again, I just can't say for sure.
15  Q. You don't know?
16  A. No.
17  Q. Okay. Were you present at any time when
18     the assault was going on?
19  A. I was on the pod, yeah.
20  Q. I'm sorry, you were where?
21  A. I was on the unit at the time, yeah.
22  Q. Yeah. And do you recall Jonathan being
23     in your cell for about an hour and 40 minutes?
```

## Page 5

```
 1  A. No, I don't.
 2  Q. Do you recall how long Jonathan was in
 3     your cell?
 4  A. I didn't even know he was there.
 5  Q. Where were you at the time on the unit?
 6  A. Can I ask you something? I don't even
 7     know what all this is about. I just got
 8     subpoenaed to talk to you --
 9  Q. Yeah. Yeah.
10  A. -- for Leite versus Goulet. Like, I
11     don't know what any of this is about.
12  Q. No, I'm happy to give you some
13     explanation.
14  A. I had some legal ramifications because of
15     all this and, you know, it wasn't in my favor, so
16     I don't know why I'm sitting here now.
17  Q. Okay.
18  A. I think that's all -- it should be taken
19     care of by now.
20  Q. Yup. You're sitting here because you're
21     a witness. You're not a party. You're not being
22     sued.
23  A. Okay.
```

Page 6

1  Q.  There are -- nobody is seeking to get
2  anything from you.  There are no consequences to
3  you as a result of this.  Mr. Leite has brought
4  suit against certain correctional officers, and
5  the claim is that they failed to protect him from
6  the -- failed to adequately protect him.  So
7  because you were -- because the attack happened in
8  your cell, we're seeking to gain information from
9  you, not about who did it.  I don't care who did
10 it, but how long it went on, you know, if you were
11 there, and whether any correctional officers went
12 through on rounds while it was going on.
13 A.  Wouldn't that be on the camera?
14 Q.  Yeah, it was.
15 A.  As far as the whole incident, everything
16 was done to hide it from the cops.  I don't see --
17 I don't feel the cops did anything wrong at all.
18 We took as much care as we could to avoid the cops
19 finding out.  They did everything that they were
20 supposed to do, as far as I'm concerned.  And
21 they're not my best friends.  You know what I
22 mean?  So they didn't do anything wrong that day.
23 Q.  Okay.  What did you do to prevent the COs

Page 7

1  from finding out?
2  A.  Well, afterward, I made it look like he
3  was sleeping on my bed, like he was anybody else.
4  There wasn't any blood or any -- blood or anything
5  around that could tip the cops off or anything
6  like that.  We cleaned the areas up, and just made
7  it look like he was sleeping.  The cops did
8  everything they were -- they did their rounds.
9  They talked to people on the unit that day.
10 There's a health and welfare check they do every
11 hour, and they couldn't have known anything was
12 going on that day.
13 Q.  All right.  Well, how -- the video shows
14 Jonathan Leite entering your cell at 2:39 p.m. and
15 exiting the cell at 4:20 p.m.
16 A.  Um-hum.
17 Q.  For what period of time did the assault
18 itself go on?
19 A.  Couple minutes.  Wasn't even.  Wasn't
20 very long at all.  Wasn't long at all.  People on
21 the pod couldn't even say it was going on.  I --
22 they didn't know it was going on.  It happened
23 quick.  You know, minutes.

Page 8

1  Q.  So after the assault was over, why did
2  Jonathan remain in your cell, Jonathan Leite?
3  A.  Because he was dizzy, disoriented.  If I
4  let him out of the cell, then the cops would know
5  what was going on.  He hung out in my cell many
6  times.  So him being in my cell at the point
7  wouldn't draw suspicion.  He was sleeping on the
8  bunks.  So I let him stay in my room, you know,
9  and just -- I literally put him in bed.  He looked
10 just like a sleeping inmate.  You know, there was
11 no -- nothing to tip off anybody that he was in
12 danger or anything like that.
13 Q.  But you had a cellmate at that time who
14 was not Jonathan Leite, right?
15 A.  Um-hum.
16 Q.  Yes?
17 A.  Um-hum.
18 Q.  Okay.  And where --
19     MS. CUSACK:  If you could just -- just
20 verbalize "yes" if that's what you're --
21     THE WITNESS:  Sure.  Sorry.  Yes.
22     MS. CUSACK:  Thank you.
23     THE WITNESS:  All right.

Page 9

1      MS. CUSACK:  Thank you.
2  Q.  BY MR. KING:  Where was your cellmate?
3  A.  In and out.  In bed, not in bed.  There
4  was a lot of activity that day.  So I mean he was
5  around.
6  Q.  Okay.  So while Jonathan Leite was
7  sleeping in bed, you and your cellmate were also
8  in and out of the cell; is that right?
9  A.  Yeah.
10 Q.  All right.  Jonathan Leite is shown
11 leaving your cell at 4:20 p.m.
12 A.  Um-hum.
13 Q.  And he's shown on the video --
14 A.  Stumbling out?
15 Q.  Yes.
16 A.  Um-hum.
17 Q.  And so why did he leave your cell at
18 4:20?
19 A.  Because count was coming.  So he needed
20 to be out of there for count.
21 Q.  Count was at 5:00, right?
22 A.  About that.  I don't know.  They changed
23 it from back then.

### Page 10

1  Q. So when count was coming, did you wake
2  him up or was he awake?
3  A. He was awake but, like I said,
4  disoriented. He wasn't aware of his surroundings
5  that much.
6  Q. Now, Jonathan entered your cell wearing
7  a white T-shirt.
8  A. And green pants. He left wearing gray
9  shorts.
10 Q. Yeah. How did that happen?
11 A. I changed him because he was wet from the
12 ice. We were trying to keep him cool. He had a
13 head injury, so we wanted to keep him cool, awake.
14 So his shirt got wet. There wasn't any real
15 blood. He puked. So we had to clean up.
16 Q. He vomited in your cell?
17 A. (Nods head affirmatively.)
18 Q. Yes?
19 A. Yes.
20 Q. Okay.
21 A. Like I said, every precaution was taken
22 to -- for the cops not to notice. Everything we
23 could do. We threw everything away that we could.

### Page 11

1  We flushed. Every piece of evidence that would
2  lead the cops to knowing something was wrong was
3  gone, you know what I mean? That was the whole
4  point of hiding it from them. There was nothing
5  they could have done at that point.
6  Q. Do you recall, I don't know if you
7  witnessed it or not, but Jonathan Leite vomiting
8  from his bunk --
9  A. Yeah.
10 Q. -- onto the floor?
11 A. Yeah.
12 Q. And did someone clean that up?
13 A. Yeah, somebody did. Yeah.
14 Q. An inmate?
15 A. I think so. I'm not sure. Somebody did
16 clean it up, so the cops wouldn't see it.
17 Q. So someone cleaned it up before rounds?
18 A. Yeah.
19    MR. KING: All right. Thank you for your
20 time.
21    THE WITNESS: All right. You're welcome.
22    MS. CUSACK: Sir, I have one question for
23 you. Just one.

### Page 12

1  EXAMINATION
2  BY MS. CUSACK:
3  Q. When you say the word "cops," you mean
4  COs?
5  A. Correctional officers, yeah.
6     MS. CUSACK: Thank you.
7  A. As far as I'm concerned, they -- there
8  was nothing they had -- they did their jobs as
9  best they could. Like I said, Jonathan Leite
10 looked like he was a sleeping inmate, you know
11 what I mean? I noticed on rounds that the cops,
12 they talked to people. They were -- they -- you
13 know, if they could have done something, they
14 could have -- they would have. As far as I'm
15 concerned, they did everything they could have
16 done, you know what I mean? So we took every
17 precaution for them to not see it, you know, to
18 get away with it, so -- yeah. All right.
19    MR. KING: Thank you, sir.
20    MS. CUSACK: Thank you.
21    THE WITNESS: Have a good day.
22    MS. CUSACK: You have a good day too.
23    (Deposition concluded at 1:43 p.m.)

### Page 13

1  CERTIFICATE OF WITNESS
2
3  I, Johnathan Gelinas, have read the
4  foregoing transcript of deposition taken on
5  Wednesday, August 30, 2017, at the Northern NH
6  Correctional Facility, Berlin, New Hampshire, and
7  do hereby swear/affirm it is an accurate and
8  complete record of my testimony given under oath
9  in the matter of Leite v. Goulet, et al.,
10 including any and all corrections that may appear
11 on those pages denoted as "Corrections."
12
13 _____
14 Johnathan Gelinas
15 STATE OF _____
16 COUNTY OF _____
17
18 Subscribed and sworn to before me this _____ day
19 of _____, 2017.
20
21 _____
22 Notary Public_____ J.P._____
23 My Commission Expires:_____

Page 14

1  CORRECTION AND SIGNATURE PAGE
2  **DEPOSITION:** Johnathan Gelinas
3  **DATE OF DEPOSITION:** August 30, 2017
4  PAGE LINE    NOW READS        SHOULD READ
5  _____  ____  _____  _____
6  _____  ____  _____  _____
7  _____  ____  _____  _____
8  _____  ____  _____  _____
9  _____  ____  _____  _____
10 _____  ____  _____  _____
11 _____  ____  _____  _____
12 _____  ____  _____  _____
13 _____  ____  _____  _____
14 _____  ____  _____  _____
15 _____  ____  _____  _____
16 _____  ____  _____  _____
17 _____  ____  _____  _____
18 _____  ____  _____  _____
19
20 Dated this _____ day of _____, 2017.
21
22 _____
23 Johnathan Gelinas

Page 15

1           C E R T I F I C A T E
2      I, Celeste A. Quimby, a Licensed Court
3  Reporter of the State of New Hampshire, do hereby
4  certify that the foregoing is a true and accurate
5  transcript of my stenographic notes of the
6  deposition of Johnathan Gelinas, who was first
7  duly sworn, taken at the place and on the date
8  hereinbefore set forth.
9      I further certify that I am neither attorney
10 nor counsel for, nor related to or employed by any
11 of the parties to the action in which this
12 deposition was taken, and further that I am not a
13 relative or employee of any attorney or counsel
14 employed in this case, nor am I financially
15 interested in this action.
16     THE FOREGOING CERTIFICATION OF THIS TRANSCRIPT
17 DOES NOT APPLY TO ANY REPRODUCTION OF THE SAME BY
18 ANY MEANS UNLESS UNDER THE DIRECT CONTROL AND/OR
19 DIRECTION OF THE CERTIFYING REPORTER.
20
21
22
23          CELESTE A. QUIMBY, LCR No. 17